# CHARLESTON.

JOSEPH F. HERMANN v. FRIEND E. GODDARD *et als.*

Submitted September 4, 1918.   Decided September 10, 1918.

1. VENDOR AND PURCHASER—*Contract—Sufficiency of Description.*

A contract for the sale and conveyance of the vendor's property at a named village or post office, consisting of houses, a lot and lumber, is sufficient in point of certainty as to subject matter, since it impliedly contemplates all of the vendor's property at the place named and of the kind designated.   (p. 521).

2. SPECIFIC PERFORMANCE—*Insufficiency—Contract.*

A paper drawn as and for a contract of sale and leaving open to future negotiation and settlement, the time and terms of payment of deferred purchase money, is not enforcible in a court of equity. (p. 522).

3. SAME—*Incompleteness of Contract.*

A paper drawn as and for a contract of sale of houses, a lot and lumber, at a specified price, and a stock of goods, at another price determinable by invoice, contemplates an entire contract for the sale of all the property named, wherefore its incompleteness as to the sale of the stock of goods precludes compulsory specific performance of any portion thereof.   (p 522).

Case Certified from Circuit Court, Wetzel County.

Bill by Joseph F. Hermann against Friend E. Goddard and others.   Demurrer to the bill overruled and case certified.

*Reversed and demurrer sustained.*

*T. M. McIntire,* for plaintiff.

*Larrick & Lemon,* for defendants.

POFFENBARGER, PRESIDENT:

The decree complained of and certified here for review overruled a demurrer to a bill setting up, and seeking specific performance of the following contract for the sale of real estate and personal property: "March 26th, 1917, West Va. Contract made by and between J. F. Herrman of the first part and Friend E. Goddard and W. V. Heurich of the second part.   The party of the first part agrees to convey to the parties of the second part, for and in consideration of the

sum of two thousand dollars, the receipt of one dollar of which is hereby acknowledged. The party of the first part agrees to convey unto the parties of the second part his property at West, W. Va. consisting of houses, lot and lumber. It is further agreed that the store and fixtures are to be conveyed at invoice price or at cost. Invoicing to begin April 2nd, 1917, The parties of the second part are to pay at the end of invoice the sum of two thousand dollars and the remainder as can be agreed upon.''

Although very general as regards the real estate, houses and lumber, the contract is sufficient for identification thereof, with the aid of intrinsic evidence. It pertains to the property of the vendor, houses, lots and lumber, at a specified place, West, West Virginia. Impliedly, it calls for the only lot the vendor has at that place and all of his houses and lumber, there situate. If he had more than one lot there, it is highly improbable that he would have mentioned a lot and houses and lumber as ''his property at West.'' It may be developed in the progress of the cause, of course, that he has more than one lot there, and, in that event, the contract might fail for uncertainty, but a situation of that sort is not to be assumed or presumed against the implication arising from the terms of the contract. A contract need not describe its subject matter so minutely as to make resort to extrinsic evidence unnecessary. Nor is it necessary to adopt the clearest or best description. Such description as suffices, with the aid of admissible extrinsic evidence, to identify the subject matter with reasonable certainty, is all that is required.

There is a fatal defect, however, in the provision of the contract relating to the stock of goods. This provision, on its face, says the parties bound themselves to agree upon such terms. Manifestly, this covenant to agree upon the terms of payment of the excess of the purchase price of the goods, above the two thousand dollars stipulated to be paid at the conclusion of the invoice, is a mere moral obligation incapable of judicial enforcement, for no court can make a contract for parties either in whole or in part. An agreement to agree upon boundary lines, in a contract of sale of land,

is not enforcible, unless nor until the lines are so fixed. *Reger* v. *McAllister,* 70 W. Va. 52.

That the terms of payment constitute an essential element of a contract of sale, is very well settled. "A contract which leaves for future negotiation and settlement the time and terms upon which the deferred purchase money is to be paid will not be enforced by a court of equity." *Berry* v. *Wortham,* 96 Va. 87. To the same effect, see *Edichal Buillion Co.* v. *Columbia Gold Mining Co.,* 87 Va. 641, and *Pickens* v. *Stout,* 67 W. Va. 422.

Two grounds of escape from this result are set up: (1) separableness of the contract, and, (2) an amendment of the bill asserting an agreement between the parties, variant from that alleged to have been written. The first contention is clearly fallacious. A prerequisite to separableness of a contract is the existence of a contract. Until all the terms are settled and agreed upon, there is no contract in the legal sense of the term. Agreement upon some of the elements or factors of a contract is the mere beginning of a thing left in an incomplete state. The unskilfully drawn paper contemplated a sale of a lot with a store house and other buildings on it, some lumber and a stock of goods. It is not pretended in argument that there were separate and distinct purchases, nor can the paper be properly construed as contemplating anything short of the sale of all the property mentioned in it. The separate prices stated were mere agreements as to the values or sale prices of the two classes of property constituting one subject of negotiation, and the agreement, being incomplete as to one of the classes, was incomplete as to the entire subject. In law, there was no contract, nothing to separate into parts.

The amendment falls under the condemnation of the rule forbidding the admission of parol evidence to vary, contradict, alter or in anywise affect the terms of a written contract. The paper as set up in the bill stipulates for terms of payment of the purchase money above four thousand dollars, "As can be agreed upon." The amendment alleges that, at the date thereof, the purchasers had arranged to borrow money for the payment of such excess, from persons having

it deposited on time in a bank, or banks, and that they were to execute their notes to mature on or about the date of the maturity of the certificates of deposit. The oral agreement thus set up is manifestly different from the one stated in the alleged written agreement. What is inherently and legally inadmissible as evidence cannot be made efficacious by merely pleading it.

For the reasons stated, the demurrer should have been sustained and leave granted the plaintiff to amend his bill, wherefore the decree complained of will be reversed, the demurrer sustained and these adjudications certified to the court below.

*Reversed and demurrer sustained.*